IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KAREEM HOWARD, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-66-RAH |
| | )           [WO] |
| BOMBARDIER RECREATIONAL PRODUCTS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

### **I. INTRODUCTION**

Plaintiffs Kareem Howard and Lamesa Howard, both Alabama citizens, originally filed this action in the Circuit Court of Autauga County, Alabama, seeking damages for injuries and property damage resulting from the operation of an allegedly defective Can-Am Spyder PT LTD motorcycle (Spyder or motorcycle). The Plaintiffs bring various state law claims—including claims of negligence, wantonness, product liability, and breach of express and implied warranties—against the Spyder's manufacturer, Defendant Bombardier Recreational Products (BRP), a Canadian citizen; and the Spyder's seller, Defendant Homewood Motorcycles, Inc., d/b/a Big #1 Motorsports (Big #1), an Alabama citizen.

On February 1, 2023, BRP removed the action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.) In the Notice of Removal,

1

BRP asserts that the Plaintiffs fraudulently joined the nondiverse Defendant Big #1 to try to defeat federal jurisdiction, and thus the Court should ignore Big #1's citizenship. BRP further contends that complete diversity exists between the Plaintiffs and the only properly joined defendant—BRP—and that the amount in controversy exceeds $75,000. The Plaintiffs subsequently filed a Motion to Remand, (Doc. 9), arguing that Big #1 was not fraudulently joined and that the amount in controversy does not exceed $75,000.

For the reasons explained below, this Court lacks subject matter jurisdiction over this action. Therefore, the Plaintiffs' Motion to Remand is due to be granted, and this case is due to be remanded to the Circuit Court of Autauga County, Alabama.

## II.  BACKGROUND

In September 2020, the Plaintiffs purchased a new 2021 Can-Am Spyder PT LTD from Big #1. BRP designed and manufactured the Spyder. Approximately nine days after the purchase, the Spyder spontaneously caught fire while the Plaintiffs were stopped on Highway 82 North in Autauga County preparing to make a left turn. The Plaintiffs were able to turn off the ignition and jump off the Spyder before it was completely engulfed in flames. The Spyder was a total loss, and the Plaintiffs lost additional items that were stored in the motorcycle's compartments.

The Plaintiffs also allegedly suffered severe mental and physical injuries, pain and suffering, mental anguish, and loss of earning capacity as a result of the combustion.

According to the Plaintiffs, the Spyder they purchased was defective in that BRP "affixed certain wires to the [motorcycle's] gas tank." (Doc. 1-2 at 10.) The Plaintiffs further allege that the Spyder was not fit for its ordinary purpose "in that it was defective to the point that it spontaneously caught fire while at a complete stop." (*Id.* at 11.) Also, the Defendants, including Big #1, allegedly "had reason to know" that the design and manufacture of the Spyder was defective when the Spyder was sold. (*Id.*) Moreover, the Plaintiffs allege that in "allowing the [Spyder's] known defective condition to exist and allowing said defective product to be sold," the Defendants, including Big #1, "[n]egligently failed to exercise ordinary care" and "[n]egligently failed to warn the Plaintiffs of said known defect," among other things. (*Id.* at 6.)

### III.  LEGAL STANDARD

"Federal courts," including this Court, "are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action initially filed in state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As relevant here, federal jurisdiction exists—and removal is

proper—if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a)(1), 1441(a); *Caterpillar Inc.*, 482 U.S. at 392. "[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). "Because removal jurisdiction raises significant federalism concerns," federal courts must "construe removal statutes strictly," and all doubts about the existence of federal jurisdiction "should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

The removing defendant's burden to prove fraudulent joinder is a "heavy one." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). The defendant must prove by clear and convincing evidence "that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* (quoting *Crowe*, 113 F.3d at 1538). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* at 1333 (citation omitted).

The pleading standard for surviving fraudulent joinder "is a lax one." *Id.* at 1332–33. Rather than the plausibility standard, *see Ashcroft v. Iqbal*, 556 U.S. 662,

4

678 (2009), a plaintiff can defeat an assertion of fraudulent joinder by showing that their complaint has "a possibility of stating a valid cause of action," *Stillwell*, 663 F.3d at 1333 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)).  "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight.  That is possible.  Surely, as in other instances, reason and common sense have some role.'"  *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (citation omitted).  Put another way, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'"  *Id.* (citation omitted).  Moreover, any uncertainties about state substantive law must be resolved in the plaintiff's favor.  *Stillwell*, 663 F.3d at 1333.

To determine whether the complaint possibly states a valid cause of action, this Court must look to the "pleading standards applicable in state court," not federal court.  *Id.* at 1334.  The Supreme Court of Alabama has explained that "a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."  *Haywood v. Alexander*, 121 So. 3d 972, 974–75 (Ala. 2013) (citation omitted).

## IV.  DISCUSSION

At issue is whether this Court has subject matter jurisdiction over this action.  BRP contends that Defendant Big #1 was fraudulently joined due to its status as an innocent seller under ALA. CODE § 6-5-521, which would immunize Big #1 from the

5

Plaintiffs' claims. Thus, according to BRP, Big #1 and the claims against it should be dismissed, thereby preserving federal diversity jurisdiction. The Plaintiffs assert that Big #1 was not fraudulently joined because their claims arising out of Big #1's "independent acts," which the statute expressly excludes from innocent seller immunity. *See* ALA. CODE § 6-5-521(b)(4). BRP submitted an affidavit from William Joseph Belmont III, Big #1's CEO, who contends that BRP "does not currently, nor has it ever, had any role" in the Spyder's design or manufacture. (Doc. 1-4 at 3.) Additionally, Belmont states that Big #1 inspected the Spyder the day before it was sold to the Plaintiffs. (*Id.*) BRP further argues that, because the Plaintiffs do not allege in their Complaint that Big #1 manufactured or assembled the Spyder, or that Big #1 had substantial control over the design, testing, or manufacture of the Spyder, Big #1 is immune from liability. "This analysis is incomplete, however, because it ignores the 'independent acts' for which [Big #1] . . . may still be liable." *Waits v. Kubota Tractor Corp.*, No. 7:19-cv-01080-LSC, 2019 WL 4917903, at *3 (N.D. Ala. Oct. 4, 2019).

Alabama's "innocent seller" statute protects "distributors who are merely conduits of a product" by affording them immunity from suit. *See* ALA. CODE § 6-5-521(b)(4). But the statute does not "protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud." *Id.* "In short, the statute

immunizes innocent sellers from strict liability, but not from their independent torts or breaches of warranty." *Waits*, 2019 WL 4917903, at *3. Thus, to prove fraudulent joinder, BRP must show that it "appear[s] beyond doubt that [the Plaintiffs] can prove no set of facts in support of the claim" that Big #1 engaged in "independent acts" that might subject Big #1 to liability under § 6-5-521. *See Haywood*, 121 So. 3d at 974–75 (citation omitted).

Since the innocent seller statute was implemented in 2011, it appears that the Alabama appellate courts have not construed the scope of this provision, particularly the phrase "independent acts." *Accord Stockman v. Safford Trading Co.*, No. 21-0527-WS-B, 2022 WL 446812, at *3 (S.D. Ala. Feb. 14, 2022) (making this observation in February 2022). BRP does not argue otherwise. This lack of guidance has caused Alabama federal courts to proceed "with caution in the fraudulent joinder context." *Vinson v. Extreme Prods. Grp., LLC*, No. 1:20-CV-00321-CLM, 2020 WL 6562362, at *4 (N.D. Ala. Nov. 9, 2020).

Multiple district courts have concluded that the innocent seller statute "leaves open the possibility of a claim against a seller for negligently selling a product which the seller knows or should know is unreasonably dangerous." *Stockman*, 2022 WL 446812, at *3 & n.6 (collecting cases). While these district court decisions are not binding, this Court finds them persuasive. *See, e.g.*, *Vinson*, 2020 WL 6562362, at *3–4 (concluding it was possible that the plaintiff had a valid claim under Alabama

law where it was alleged that the seller knew or should have known that the product was unreasonably dangerous and that the seller failed to warn of known defects); *Waits*, 2019 WL 4917903, at *4 (concluding that the plaintiff had a "reasonable possibility of stating a claim under Alabama law" where it was alleged that the sellers "knew or should have known that the [product] was dangerous, and that they sold the [product] without warning of those dangers"); *Barnes v. Gen. Motors, LLC*, No. 2:14-CV-00719-AKK, 2014 WL 2999188, at *3–5 (N.D. Ala. July 1, 2014) (concluding that the plaintiff possibly stated a valid claim under Alabama law where it was alleged that the sellers sold a product they knew was dangerous and failed to warn the consumer of those dangers); *cf. Lazenby v. ExMark Mfg. Co.*, No. 3:12-CV-82-WKW, 2012 WL 3231331, at *3 (M.D. Ala. Aug. 6, 2012) ("The decision to stock and sell a product that was known to be likely or probable to cause injury could constitute an independent act of wantonness that is separate from any act related to the design or manufacture of the product itself."). In recognizing that the sellers may be subject to liability, the *Barnes* court explained that the plaintiff's claims were not merely that the sellers "unknowingly [sold] [a] product[] that later prove[d] to be defective." 2014 WL 2999188, at *5. Instead, the plaintiff alleged that the sellers sold a product they knew was dangerous and failed to warn the consumer of those dangers. *Id.* at *3.

8

In their Complaint, the Plaintiffs allege that the Spyder they purchased was defective and that Big #1 "had reason to know" when the Spyder was sold that the design and manufacture of the Spyder was defective to the point that it spontaneously caught fire while at a complete stop. (Doc. 1-2 at 11.) The Plaintiffs further allege that in "allowing the [Spyder's] known defective condition to exist and allowing said defective product to be sold," Big #1 "[n]egligently failed to exercise ordinary care" and "[n]egligently failed to warn the Plaintiffs of said known defect." (*Id.* at 6.)

Like the plaintiff in *Barnes*, the Plaintiffs here do not merely allege that Big #1 unknowingly sold a product that later proved to be defective. Instead, they allege that Big #1 knew or "had reason to know" that the motorcycle was defective, and that Big #1 sold the motorcycle without warning the Plaintiffs about this defect and without exercising ordinary care. Regarding negligence claims, Alabama courts recognize a general duty to be careful not to hurt others, and the "key factor [in determining whether a duty exists] is whether the injury was foreseeable by the defendant." *Smitherman v. McCafferty*, 622 So. 2d 322, 324 (Ala. 1993). In his affidavit, Belmont does not deny that Big #1 knew or had reason to knew about the Spyder's defect, and he admits that Big #1 inspected the Spyder before selling it to the Plaintiffs. Belmont also does not state that Big #1 exercised ordinary care. And because Alabama courts have not spoken to the meaning of "independent acts"

within the innocent seller statute, this Court must resolve the uncertainty in the state substantive law in the Plaintiffs' favor. *See Stillwell*, 663 F.3d at 1333.

BRP has failed to carry its "heavy" burden to prove fraudulent joinder by clear and convincing evidence, especially given the uncertainties in Alabama law. *See id.* at 1332–33; *Barnes*, 2014 WL 2999188, at *6. Because Big #1 may be liable for "independent acts" of negligence from which they are not immune under the innocent seller statute, the Plaintiffs' Complaint has a reasonable possibility of stating a claim under Alabama law. *See Stillwell*, 663 F.3d at 1333; *Legg*, 428 F.3d at 1325 n.5. This possibility is sufficient to clear the "low bar" for surviving an assertion of fraudulent joinder. *See Waits*, 2019 WL 4917903, at *4. Because BRP has failed to prove fraudulent joinder, complete diversity of citizenship is lacking. Therefore, the Court concludes that it lacks subject matter jurisdiction over this action, and the Plaintiffs' Motion to Remand is due to be granted.[1]

---

[1] Given the Court's conclusion that complete diversity of citizenship is lacking, the Court need not address the Plaintiffs' argument that the amount in controversy is not satisfied. Additionally, because the Plaintiffs' Complaint possibly states a valid negligence claim under Alabama law, the Court pretermits discussion of their remaining claims. *See Stillwell*, 663 F.3d at 1333 (explaining there is no fraudulent joinder if there is "a possibility that a state court would find that the complaint states *a* cause of action against any one of the resident defendants" (emphasis added) (citation omitted)); *see also Waits*, 2019 WL 4917903, at *4 n.4 (similarly declining to expound upon the plaintiff's other claims given the court's conclusion that two of the claims possibly stated a valid cause of action).

## V.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1.  The Plaintiffs' Motion to Remand (Doc. 9) is GRANTED;

2.  This case is REMANDED to the Circuit Court of Autauga County, Alabama;

3.  The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the remand to the Circuit Court of Autauga County, Alabama.

**DONE** on this the 1st day of May, 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE